# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LORI D. MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1256 (RMC) |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| Attorney General, | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Lori D. McLaughlin is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). She complains here of discrimination based on her sex (female) and race (African American); retaliation for protected equal employment opportunity activity; and a hostile work environment. Attorney General Eric H. Holder, Jr. is sued in his official capacity because ATF is a constituent agency of the Department of Justice. Defendant moves for summary judgment. The Court will grant in part and deny in part the motion. A genuine dispute of material fact precludes summary judgment on one of Ms. McLaughlin's retaliation claims.

## I. FACTS

Lori D. McLaughlin in an African American female. She has been employed in various capacities with ATF since 1988. For all relevant times to this matter, from March 2002 to 2009, she worked as a Criminal Investigator (Special Agent) in the Orlando Field Office, Tampa Field Division.

From March 2002 to April 2004, Ms. McLaughlin's first line supervisor was Michael

Hegerfeld, Resident Agent in Charge ("RAC") of the Orlando Field Office.  Mr. Hegerfeld was

eventually replaced by Russell May.  From December 2002 to 2009 – when she was reassigned to

the Dallas Field Division of – Ms. McLaughlin's second level supervisor was John Ryan, Assistant

Special Agent in Charge ("ASAC") of the Tampa Field Division.  Mr. Ryan was physically located

in Tampa, Florida.  Each of these men is White.

In January 2004, the Tampa Field Division underwent a routine office review by the

ATF Office of Inspection.  The Orlando Field Office fared very poorly on the review.  One or more

"significant exceptions to established policies and procedures" was found in most of the topics for

review, including: Investigation and Documentation Analysis, Confidential Informants, Electronic

Surveillance Procedures, the Agent Cashier Fund, Accountable/Controlled Property and Investigative

Equipment, Time and Attendance, the Evidence Vault, Employee Records, Management Controls,

and Task Forces and Asset Forfeiture.  Def.'s Opp'n ("Opp'n") [Dkt. #39], Ex. 51. Additionally,

during the review, "some of the special agents cited an uncomfortable work environment as a

negative morale factor"[1] and "one special agent reported being singled out for disparate treatment

on the basis of race and/or gender."  *Id.*  In response to the unfavorable review, ASAC Ryan visited

the Orlando Field Office and interviewed the employees.  During her interview, Ms. McLaughlin

raised her concerns about a hostile work environment and about her boss, RAC Hegerfeld, with Mr.

---

[1] The "uncomfortable work environment" apparently stemmed from "the perception that
neither the RAC nor the Division Office managers addressed the disruptive behavior of a Field
Office employee appropriately and . . . distinct camps were forming in the field office."  (Opp'n,
Ex. 51 at 17.)

Ryan.  A few months later, Mr. Hegerfeld retired, and Russell May was eventually brought in as the RAC.

Ms. McLaughlin initiated equal employment opportunity ("EEO") counseling in February 2004 and filed a formal complaint of discrimination, alleging race, sex, and reprisal discrimination on April 2, 2004.  This complaint was dismissed by the Department of Justice on September 30, 2004.  Ms. McLaughlin did not further pursue the matter.

On April 17, 2006, Ms. McLaughlin applied to attend the Women in Federal Law Enforcement ("WIFLE") Conference to be conducted in Washington, D.C. from June 20 to 22, 2006. The parties dispute what happened to her application.  Defendant insists that the application was not forwarded for approval because Lorena Zabel, Senior Operations Officer in Tampa, went on vacation and forgot to forward it before she left.  When alerted that the deadline had arrived, Deputy Operations Officer Hardesty did not take action because he was trying to learn who would pay for the travel of a Conference attendee.  Ms. McLaughlin contests these explanations.  It is undisputed, however that Ms. McLaughlin's application was not approved, and she did not attend the Conference.

Soon thereafter, all ATF employees were notified of an opportunity to submit nominations for DOJ's Community Service Award and Citizen Volunteer Service Award for 2006. Mr. May told Ms. McLaughlin that he wanted to nominate her for the Community Service Award, and she provided background information to him.  What happened next is subject to controversy: either Mr. May forwarded the nomination to Mr. Ryan in Tampa but Mr. Ryan did nothing with or about it; or Mr. May forgot or failed to forward it to Mr. Ryan.  In either case, Ms. McLaughlin's application was not forwarded to headquarters for consideration, and she did not receive the award.

On September 1, 2006, Ms. McLaughlin filed another EEO complaint alleging discrimination and reprisal with respect to the handling of her applications for the WIFLE Conference and DOJ Community Service Award. Administrative Judge Ana Lehmann of the Equal Employment Office Commission issued a decision denying Ms. McLaughlin's claims. This decision was adopted as the DOJ's Final Agency Decision and appealed by Ms. McLaughlin to the EEOC. On April 24, 2008, the EEOC's Office of Federal Operations denied Ms. McLaughlin's appeal.

In the meantime, in July 2007, the Orlando Violent Crime Impact Team ("VCIT") was established. ATF Agents were detailed to the VCIT unit, usually for 90 days. All of the Special Agents who served on the first 90-day detail (from July 9, 2007 to September 30, 2007) were White males. All of them received a $1,000 cash award at the end of their detail. Ms. McLaughlin served on the second detail, from October 1, 2007 to December 31, 2007. None of the agents who served on the second detail received cash awards. Most, but not all, of the second group of agents received time-off awards. Ms. McLaughlin was one of the agents who did not. Ms. McLaughlin filed another EEO complaint with the agency on December 14, 2008 alleging that she had been discriminated against when she did not receive an award for her detail to the VCIT.

On November 4, 2008, Ms. McLaughlin received her annual performance appraisal for the period ending September 30, 2008, by which Messrs. May and Ryan judged her "Fully Satisfactory," a lower rating than many of her colleagues. She disputed this rating and filed a formal EEO complaint on November 18, 2008.

Thereafter, in April 2009, Ms. McLaughlin received a time-off award for her work on the Disney Pipe Bomb investigation and prosecution. Ms. McLaughlin alleges that she should have been given a cash award. Similarly, Ms. McLaughlin alleges that she received a lesser time-off

award for her work on Operation Kissimmee than the lead agent on the case. She sought EEO counseling with respect to these claims on May 8, 2009 and filed a formal EEO complaint on June 2, 2009.

Ms. McLaughlin's EEO complaints with respect to the VCIT award, the 2008 performance evaluation, and the Disney Pipe Bomb and Operation Kissimmee investigations were later consolidated by the Department of Justice. More than 180 days passed from the time Ms. McLaughlin filed these complaints and the filing of her Amended Complaint in this action on October 9, 2009.

## II. LEGAL STANDARD

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671,

675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### B. Discrimination and Retaliation

For many years, courts evaluated discrimination and retaliation[2] claims using the familiar burden-shifting framework of *McDonnell Douglas. See, e.g. Adewole v. PSI Services, Inc.*, — F.Supp.2d — , 2011 WL 2938137 (D.D.C. 2011). Plaintiffs were first required to establish a prima facie case of discrimination and then the burden shifted to defendant to articulate a nondiscriminatory reason for the adverse action. *See Holocomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006); *Carney v. Am. Univ.*, 151 F.3d 1090, 1092-93 (D.C. Cir. 1998). Recently, however, the D.C. Circuit has stated that whether a plaintiff has made out a prima facie case is "almost always irrelevant" and "is a largely unnecessary sideshow," *Brady v. Office of the Sgt. at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). Instead, when "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas.*" *Id.* at 494 (emphasis in original). The district court immediately proceeds to the ultimate issue of discrimination or retaliation: "has the employee

---

[2] Title VII speaks of retaliation as a form of discrimination. 42 U.S.C. § 2000e-3(a). For convenience, the Court refers to "discrimination" as the "core antidiscrimination provision [of Title VII]," (*i.e.*, discrimination based upon race, color, religion, sex, or national origin), *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006), and the Court refers to "retaliation" as discrimination based upon an employee engaging in protected activity, 42 U.S.C. § Section 2000e-3(a).

produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*  In answering this ultimate question, the prima facie case remains relevant, but only as part of the evidence the court considers.  *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) ("[T]he court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other–to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination or] retaliation.")  The same framework applies to claims of retaliation.  *See, e.g., Prado-Kronemann*, 601 F.3d 599, 603-04 (D.C. Cir. 2011) (abandoning prima facie analysis when employer articulated a nondiscriminatory reason for the alleged retaliatory action).

In those cases where an employer contests whether an alleged action is legally "adverse," however, a court does not immediately proceed to the ultimate question of discrimination or retaliation.  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Instead, a court first determines whether the action was "adverse" within the meaning of Title VII.  *See id.*  The nature of an "adverse" action varies, depending on whether the allegation is one of discrimination or retaliation.

"Not everything that makes an employee unhappy" is an adverse action that can support a claim of discrimination.  *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *accord Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).  Some types of adverse actions are obvious, such as discharge or failure to promote.  For those that are less clear, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities."  *Brown*, 199 F.3d at 457.  The employment

decision must inflict "objectively tangible harm." *Russell,* 257 F.3d at 818. "An employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citation omitted). *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

There is a notable difference, however, between "adverse actions" that support a claim for discrimination and "materially adverse actions" that support a claim for retaliation. *Burlington Northern*, 548 U.S. at 67. "[T]he proscription against retaliation sweeps more broadly than the proscription against discrimination." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (citing *Burlington*, 548 U.S. at 66–67). Unlike discriminatory actions, retaliatory actions need not be employment related or occur in the workplace, to be prohibited by Title VII, *Burlington Northern*, 548 U.S. at 67, nor must they result in a "a materially adverse change in the terms or conditions of [one's] employment." *Id.* at 70. Nonetheless, not all forms of retaliation are actionable under Title VII. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67. The injury or harm must be "material," meaning that it could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Whether the retaliatory action could dissuade a worker from making a charge of discrimination is an objective standard based on how a reasonable employee would respond. *Id.* And, whether an action "is materially adverse depends upon the circumstances of the

particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* at 71 (quoting *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 81 (1998)).

### C.  Hostile Work Environment

"To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201.  To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).   The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 788 (1998).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Id.*

## III.  ANALYSIS

Ms. McLaughlin brings her claims under Title VII.[3]  She alleges that she was discriminated against and/or retaliated against with respect to the following actions and events: 1) her application to attend the WILFE Conference was not forwarded to headquarters; 2) she did not receive a Department of Justice Community Service Award; 3) she did not receive an award for her work on the Orlando VCIT; 4) she received an unfavorable performance evaluations in 2008; 5) she received a time-off award, instead of cash award for her work on the Disney Pipe Bomb investigation; 6) she received a reduced time-off award for her work on Operation Kissimmee; and 7) she was "berated" by her boss, Mr. May.  Each of Ms. McLaughlin's claims for discrimination fail as do most of her retaliation claims; however, there is a genuine issue of material fact that precludes summary judgment with respect to Ms. McLaughlin's claims of retaliation for her time-off award on the Disney Pipe Bomb investigation.

### A.  Women in Federal Law Enforcement Conference

On April 17, 2006, Ms. McLaughlin applied to attend the WILFE Conference to be held in Washington, D.C. from June 20-22, 2006.  As required, Ms. McLaughlin self-registered on Learn ATF and forwarded her application to her supervisor, Russell May.  Mr. May approved the application and forwarded it to Lorena Zabel, the Senior Operations Officer for the Tampa Field Division.  Ms. Zabel received plaintiff's application and put it in a file, waiting to see if anyone else

---

[3]  Plaintiff's Amended Complaint alleged claims under Title VII; the Civil Rights Act of 1991, 42 U.S.C. § 1981; the Civil Rights Attorney's Award Act, 42 U.S.C. § 1988; and 29 C.F.R. § 1614.  *See* Am. Compl. ¶ 1.  It is settled that Title VII provides the exclusive remedy for claims of discrimination in federal employment.  *See Brown v. GSA*, 425 U.S. 820, 835 (1976); *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C. Cir. 1977)  (noting a claim under 42 U.S.C. § 1981 must be brought under Title VII).

from the Tampa Division was applying for the conference before forwarding the applications.  The applications were due from the Field Divisions no later than May 15, 2006.  Ms. Zabel was out of the office on leave from May 12–19, and she failed to forward Plaintiff's WIFLE application by the deadline.  Ms. Zabel states that the failure to forward the application was "an oversight on [her] part" and that "[she] should have forwarded SA McLaughlin's application . . . prior to going on leave, but failed to so."  Mot. for Summ. J. [Dkt. # 34], Ex. H at 2.

On May 16, 2006, Ms. McLaughlin received an e-mail from Carroll Moak, Training Manager, indicating that although Ms. McLaughlin had self-registered on Learn ATF, her application had not been received by Headquarters.  Ms. Moak stated that Plaintiff's application needed to be received by noon that day in order for her application to attend the conference to be considered.  Because Ms. Zabel was on leave, Ms. McLaughlin contacted Ms. Zabel's supervisor, Keith Hardesty, about her application.  Mr. Hardesty "didn't know anything about [the application]," asked McLaughlin to forward him a copy of the application, and said he would follow up.  Opp'n, Ex. 87 at 196.

The parties disagree about what happened at this point.  Ms. McLaughlin alleges that Mr. Hardesty, under the direction of ASAC Ryan, intentionally failed to forward McLaughlin's application to Headquarters in retaliation for her prior EEO complaints.  Opp'n at 13.  Mr. Hardesty, on the other hand, testifies that he had a question about who was funding the conference and he needed to resolve the funding question before forwarding the application.  Mot. for Summ. J., Ex. N.  If the Tampa Field Division had to pay for Ms. McLaughlin's travel and accommodations, then the Field Division would not be forwarding the nomination because of limited travel funds.  *Id.*  If the expenses were being paid by Headquarters, Mr. Hardesty would forward Ms. McLaughlin's name

to Mr. Ryan for approval. Mr. Hardesty tried to contact Carroll Moak, the training manager at ATF

Headquarters, but did not hear back before the deadline to submit the applications (that day) had

passed. *Id.*

### i. Discrimination

Ms. McLaughlin alleges that the failure to forward her application to attend the

WIFLE Conference constituted discrimination under Title VII. To be actionable under Title VII,

however, a plaintiff must have suffered an action with "materially adverse consequences affecting

the terms, conditions, or privileges of employment." *Stewart*, 275 F.3d at 1134 (D.C. Cir. 2002)

(quoting *Brody,* 199 F.3d at 457). An "adverse" action generally does not include the denial of a

training opportunity, *see Lester v. Natsios*, 290 F.Supp.2d 11 (D.D.C. 2003), especially when there

is no evidence that the missed training opportunity caused a "significant change in employment

status." *Burlington Indus.,* 524 U.S. at 761. Because the failure to forward the application was not

a "materially adverse consequence[] affecting the terms, conditions, or privileges of [Ms.

McLaughlin's] employment," *id.*, Defendant is entitled to summary judgment on this allegation.

### ii. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he

engaged in a statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er]

employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C.

Cir. 2009). The plaintiff may establish a causal connection "by showing that the employer had

knowledge of the employee's protected activity, and that the discriminatory [or retaliatory] personnel

action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)

(quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985)); accord *Clark County Sch. Dist. v.*

*Breeden*, 532 U.S. 268 (2001) (noting that the temporal connection must be "very close": a three-or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all")

The only protected activities Ms. McLaughlin identifies that occurred prior to the WIFLE incident was her January 2004 interview during the ATF Office of inspection review and her subsequent EEO counseling in Feb 2004 and complaint in April 2004. *See* Opp'n at 39-40; *see also* Def.'s Statement of Mat. Facts [Dkt. # 34-2] ¶ 9.[4]  This complaint was dismissed on September 30, 2004 and not appealed by Ms. McLaughlin.  Her WIFLE application was not forwarded by the May 16, 2006 deadline.  Thus, more than two years had elapsed since Ms. McLaughlin filed her EEO complaint and more than seven months had passed since it was dismissed.  This delay is simply too great for Ms. McLaughlin to establish a prima facie case.  *See, e.g., Clark County Sch. Dist.*, 532 U.S. at 273-274 (twenty month delay suggests no causality); *Mayers v. Laborers' Health & Safety Fund of North America*, 478 f. 3d 364, 369 (D.C. Cir. 2007) (eight or nine month delay "far too long" to establish causality); *Taylor v. Chao*, 516 F.Supp.2d 128, 138 (D.D.C. 2007) (no causality with eight month delay), *aff'd on other grounds*, 571 F.3d 1313 (D.C. Cir. 2009); *Sullivan-Obst v. Powell*, 300 F.Supp.2d 85, 94 (D.D.C. 2004) (three month and fifteen month delay too significant to find causality).

Ms. McLaughlin also fails to demonstrate causality because:  1) there is no evidence that Mr. Hardesty or Ms. Zabel was aware of Ms. McLaughlin's prior EEO activity, and in fact, both individuals testified they had no such knowledge, and 2) there is no evidence suggesting that Mr.

---

[4] Ms. McLaughlin does not dispute the facts contained in paragraph nine of Defendant's Statement of Facts.  *See* Pl.'s Stmt of Facts [Dkt. # 39-1].

Ryan or Mr. May (who are the alleged retaliators) were responsible for the failure to forward the WIFLE application. *See Taylor*, 516 F.Supp.2d at 137 ("In order to show causation, a plaintiff must show that the official responsible for the alleged retaliatory act had knowledge of the protected activity") (citing *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)).

### B.  Department of Justice Community Service Award

Sometime in the Spring of 2006, an announcement went out to all ATF employees requesting nominations for the Department of Justice's Community Service Award. Nominations for the award were to be submitted by April 14, 2006. The award was a noncash award. On April 12, 2006, RAC May indicated to Ms. McLaughlin that he would like to nominate her for the award based upon her community service accomplishments. At Mr. May's request, Ms. McLaughlin forwarded him a narrative summary of her community outreach accomplishments. That same day, Mr. May forwarded Ms. McLaughlin's nomination to Keith Hardesty, Division Operation's Officer ("DOO") for the Tampa Field Division. Mr. Hardesty does not recall if he received the nomination, and Ms. McLaughlin's nomination was not forwarded to Headquarters for consideration. No nominations from the Tampa Field Office were forwarded to Headquarters for consideration.

### i. Discrimination

As with the WIFLE Conference, Ms. McLaughlin cannot prevail on her discrimination claim because the failure to forward her nomination was not an "adverse action" within the scope of Title VII. Had she been nominated, it is speculative as to whether McLaughlin would have been selected for the award by the Department of Justice. More importantly, the award was not a cash award, and Ms. McLaughlin has failed to allege, let alone produce evidence, that the failure to receive the award was a "materially adverse [action] affecting the terms, conditions, or

privileges of [her] employment." *Stewart v. Evans*, 275 F.3d at 1134.  There is simply no "tangible change in the duties or working conditions" stemming from Ms. McLaughlin's failure to be considered for the Community Service Award.  *Id.*  Although Ms. McLaughlin may feel frustrated by the fact that her nomination was not forwarded, "[n]ot everything that makes an employee unhappy" is an adverse action under Title VII.  *Russell,* 257 F.3d at 818.  Because the failure to forward Ms. McLaughlin's nomination for the service award did not result in "objectively tangible harm," it is not actionable under Title VII.  *Id.*

### ii. Retaliation

Defendant claims that the failure to be nominated for a noncash award is not sufficiently adverse to maintain a claim for retaliation.  Even if it were, however, Ms. McLaughlin's claim of retaliation must fail because she has not provided any evidence of causality and the time between her protected activity and the failure to nominate is too great to infer causality.  *See, e.g., Taylor,* 516 F.Supp.2d at 138.

### C. Violent Crime Impact Team

Ms. McLaughlin was detailed to the Orlando VCIT during the second of three 90-day details.  All of the Special Agents who served on the first 90-day detail (from July 9, 2007 to September 30, 2007) were White males, and all of them received a $1,000 cash award at the end of their detail.  None of the agents on the second or third 90-day details (some of whom were White males) received a cash award.  The majority of the agents serving on the second and third details received time-off awards, ranging from 16 to 32 hours.  Ms. McLaughlin served on the second detail.  Unlike most of the other agents, she did not receive a time-off award.

Defendant states that no cash awards were available for the second and third details and that Ms. McLaughlin was not considered for a time-off award because "she did not meet the criteria [that] Acting G[roup] S[upervisor] McCann established for the VCIT awards." Mot. for Summ. J. at 20. These criteria included: 1) sacrifices the Special Agent made (including time away from family); 2) length of time on the VCIT; and 3) contributions to the VCIT. Ms. McLaughlin challenges the actual reliance on these criteria and contends that the stated criteria are inconsistent with the written justifications for the awards.

### i. Discrimination

The Court holds that: 1) the failure to receive a *time-off* award is not an adverse action within the scope of Title VII, and 2) no reasonable juror could find that Ms. McLaughlin failed to receive a *cash* award on the basis of her gender or race. First, the failure to give Ms. McLaughlin a time-off award for her VCIT service was not an adverse action because there was no "tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart,* 275 F.3d at 1134. Accordingly, Ms. McLaughlin cannot prevail on her claim that Defendant discriminated against her on the basis of sex or race by failing to give her a time-off award.

Second, a reasonable juror would not disbelieve ATF's stated reason for failing to give the cash award and find that discrimination was the real reason. ATF contends that agents who served on the first 90-day detail were eligible for cash awards because there was funding for the cash awards through the VCIT grant. Once the first 90-day detail expired, the funding evaporated and agents were only eligible to receive time-off awards. This contention is supported by documentary evidence to which Ms. McLaughlin offers no rebuttal.

The *only* evidence Ms. McLaughlin offers is that she is a Black female and the award recipients are White males.  Although a plaintiff can make out a case for discrimination where employees of a different race or gender are treated differently, a plaintiff must show that the other employees were similarly situated.  *E.g., Brady*, 520 F.3d at 495; *McGill v. Munoz*, 203 F.3d 843, 848 (D.C. Cir. 2000).  The employees in this instance, however, were not similarly situated because Ms. McLaughlin served on a different detail.  Tellingly, *none* of the agents who served on the second and third details (many of whom were White males just as those serving on the first detail) received a cash award.  Accordingly, no reasonable juror would conclude that the failure to award Ms. McLaughlin a cash award was discriminatory.  *See Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) ("In the absence of evidence that the comparators were actually similarly situated . . . an inference of falsity or discrimination is not reasonable."); *Brady*, 520 F.3d at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence [] there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts.")

### ii. Retaliation

Ms. McLaughlin's claim for retaliation fails because there is no causal link between her prior EEO activity and her failure to receive an award and because she has waived any retaliation claim with respect to the VCIT.  Special Agent McCann was the official responsible for recommending VCIT agents for an award.  Ms. McLaughlin has not even alleged, let alone demonstrated, that Mr. McCann knew of her prior EEO Activity.  As such, she cannot demonstrate a causal link between her EEO activity and the failure to receive an award.

Moreover, Ms. McLaughlin has abandoned and waived her claim of retaliation by failing to respond to the defendant's motion.  *See, e.g., CSX Transp., Inc. v. Commercial Union Ins.,*

*Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996); *Jones v. Air Line Pilots Ass'n,* 713 F.Supp.2d 29, 38-39 (D.D.C. 2010)*; Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") The Amended Complaint alleged that the failure to grant her an award for her VCIT detail was retaliatory. *See* Am. Compl. ¶¶ 42 & 43.  The Amended Complaint further alleged that Mr. McCann recommended her for an award and that Mr. May and Mr. Ray retaliated against her by failing to approve the award "[d]espite . . . [Mr.] McCann's recommendation . . . ." *See id.* Discovery revealed that Mr. Mcann did *not* in fact recommend her for an award, and Ms. McLaughlin abandoned her claim of retaliation in her opposition to the government's motion for summary judgment.

### D.  2008 Performance Evaluations

Ms. McLaughlin alleges that she was discriminated against because she received unfavorable performance evaluations in 2005 and 2008.  *See* Am. Compl. ¶¶ 27 & 44.  Plaintiff, however, has not alleged that she timely filed an EEO complaint with respect to the 2005 evaluation. Having no information that this claim has been exhausted, the Court will consider only her claim with respect to the 2008 performance evaluation.

ATF has a three-tiered ratings system for special agents:  "Outstanding," "Successful," and "Unsuccessful."  A rating is based on benchmarks for 18 critical elements that are

scored from 1-7.[5] *Id.*  To qualify for an outstanding rating, an employee must have received a 7 on 80% of the critical elements.  *Id.*  Ms. McLaughlin received the following ratings for 2004-2009:

| 2004 | 2005 | 2006 | 2007 | **2008** | 2009 |
|------|------|------|------|------|------|
| 6 | 5 | 5 | 5 | **6[6]** | 5 |

### i. Discrimination

As Ms. McLaughlin achieved a "successful" review on 2008 evaluation, it was "not adverse in the absolute sense." *Brown*, 199 F.3d at 458.  Ms. McLaughlin, however, relies on *Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007) to argue that her evaluation was nonetheless an "adverse action."  Opp'n at 42 - 44.  Her reliance on *Weber* is misplaced.

The plaintiff in *Weber* contended that she lost a performance award based upon lower evaluations in 1998 and 1999.  494 F.3d at 184.  Ms. Weber had proof linking the performance award to the evaluations, including a Policy Circular tying the two together and her prior evaluations for which she received performance based awards.  *Id.* at 185.  Accordingly, the court held that the lower evaluations qualified as "adverse actions insofar as they resulted in her losing a financial award or an award of leave, because a reasonable jury could conclude that such a loss 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 185-86 (quoting *Burlington,* at 57.)[7]

---

[5] It appears as though the Special Agents in the Orlando Office were rated on 16 critical elements as opposed to 18.  *See* Opp'n, Ex. 65.  This difference is not material.

[6] Ms. McLaughlin originally received a "5" for 2008, but it was later increased to a "6 " after Ms. McLaughlin discussed the evaluation with her supervisor, Mr. May.

[7] *Weber* dealt with a claim of retaliation rather than discrimination.  The definition of "adverse action" is broader for retaliation claims.  *E.g., Burlington Northern*, 548 U.S. 53.  As Ms. McLaughlin cannot meet this broader definition, she cannot meet the narrower one requiring

Unlike Ms. Weber, Ms. McLaughlin fails to produce any evidence that: 1) the evaluation in 2008 was lower than prior evaluations, or 2) that the evaluations in 2008 resulted in a failure to receive an award. Although Ms. McLaughlin states in a conclusory fashion that "on the basis of [the] lower evaluations, the Bureau gave Ms. McLaughlin either reduced awards, or no awards whatsoever," she offers no proof. Opp'n at 37.[8] Accordingly, Ms. McLaughlin's claim for discrimination based upon her performance evaluation must fail. *See Baloch*, 550 F.3d at 1199 ("Evaluations . . . were not adverse actions because none had 'tangible job consequences'"); *Taylor*, 571 F.3d at 1321 ("Taylor's bare, conclusory allegation that she was denied promotional and bonus opportunities . . . does not discharge her burden to show the evaluations were attached to financial harms.").

### ii. Retaliation

For these same reasons, Ms. McLaughlin's argument that her "adverse" performance evaluation was retaliatory must fail. The law in this Circuit is that a lowered evaluation alone is insufficient to dissuade a reasonable employee from making or supporting a claim of discrimination. *See id.* The lowered evaluation must be tied to some loss— either a financial award or an award of some other kind—to meet the standard set in *Burlington Northern*. *See id.; Weber*, 494 F.3d at 185-86.

---

that the evaluation lead to "objectively tangible harm." *E.g., Russell,* 257 F.3d at 818.

[8] Ms. McLaughlin even backtracks from this statement, later arguing that "Ms. McLaughlin *might* have been awarded a bonus, had she received an exceeds rating." Opp'n at 41. (Emphasis added.) This falls well short of her burden to survive summary judgment. *See, e.g., Taylor*, 571 F.3d at 1321.

### E. Disney Pipe Bomb Investigation

Ms. McLaughlin argues that she was discriminated against when, in February 2009, she received a time-off award for her work on the Disney Pipe Bomb investigation instead of a cash award. Ms. McLaughlin's claim of discrimination fails, but the Court will deny summary judgment with respect to the claim of retaliation.

#### i. Discrimination

The failure to receive a cash award is sufficiently adverse to support a claim of discrimination. *See, e.g., Russell,* 257 F.3d at 818-19  Thus, the Court will address Defendant's reasoning for failing to give a cash award and whether Ms. McLaughlin has provided sufficient evidence that a reasonable juror would disbelieve the Defendant's reason and instead hold that the actual reason was discriminatory. *See, e.g., Brady*, 520 F.3d at 493-94.

According to the Defendant, Mr. May recommend that Ms. McLaughlin receive a time-off award because the Disney Pipe Bomb was an important investigation. Mr. May did not recommend Ms. McLaughlin for a cash award because he believed there was no funding for a cash award. Mr. Ryan also testified that there was no funds for cash awards at this time. Ms. McLaughlin argues that whether there were funds is a disputed factual question.

There is at least some evidence from which a reasonable juror could disbelieve Defendant's proffered reason for failing to give a cash award. Ms. McLaughlin, however, has provided *no* evidence that the real reason she did not receive an award was because she is African-American or because of her gender. For instance, Ms. McLaughlin has not demonstrated that similarly situated individuals who were male or who were of a different race received cash awards for this or similar investigations during the relevant time period. Of course, Ms. McLaughlin is not

required to show that similarly situated individuals were treated differently to support her claim of discrimination as there are other ways to support a claim of discrimination. *See, e.g., Czekalski v. Peters*, 475 F.3d at 365-66.   There are  Ms. McLaughlin, however, has to provide some evidence from which a jury could conclude that the real reason she did not receive a cash award instead of a time-off award was because of her race or gender. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (plaintiff must show "*both*" that the proffered reason for the adverse action is false "*and* that discrimination was the real reason") (emphasis in original).  Because she has not, summary judgment will be granted in favor of the Defendant on this claim.

### ii. Retaliation

As with a claim for discrimination, the failure to receive a cash award is sufficiently "adverse" to support a claim of retaliation.  Thus, the Court will look at Defendant's proffered reason for the failure to grant a cash award and whether a reasonable juror could find that the reason is pretextual and that the actual reason is retaliation for prior, protected activity.

Again, Defendant alleges that Mr. May recommended that Ms. McLaughlin receive a time-off award instead of a cash award because "it was his belief that there were no cash awards available at that time."  Mot. for Summ. J. at 25.  Defendant further alleges that it was not just Mr. May's belief, but that there were, in fact, "no funds available for Special Act awards at this time." *Id.*  Whether there were funds available for cash awards, however, is a material fact in dispute. Defendant's sole evidence that funds were unavailable is a somewhat ambiguous statement from Mr. Ryan's deposition testimony. *See* Mot. for Summ. J., Ex. E at 138.[9]  And, Defendant has not laid

---

[9] Mr. Ryan stated, "I don't know.  We were just discussing this.  We've had different iterations where we've had cash available for rewards and times that we haven't.  So, based on our budgetary allocation, and—and it's been a number of years since we'd actually had money

a proper foundation that Mr. Ryan could speak about the lack of funds for the entire Agency during this time.[10]

Additionally, there is contradictory evidence about whether Mr. May submitted Ms. McLaughlin's name for a cash award and whether he knew about the alleged lack of funds before recommending her for the award.  After Ms. McLaughlin initiated EEO counseling with respect to the failure to receive a cash award, the EEO Counselor contacted Mr. May.  According to the counselor's notes, Mr. May "stated that he submitted Ms. McLaughlin's name for an incentive award . . . ; however, no funds were available for a cash award; therefore, a Time-Off award was awarded . . . ."  Mot. for Summ. J., Ex. II. at 4.  This information contradicts Mr. May's deposition testimony where he stated that he recommended Ms. McLaughlin for a time-off award, not an "incentive" or cash award.  A reasonable juror could disbelieve Defendant's proffered reason based upon this contradiction.   Moreover, because the time-off award happened shortly after two EEO complaints filed by Ms. McLaughlin,[11] a juror could reasonably believe that Ms. McLaughlin did not receive a cash award because of her prior EEO activity.

### F.  Operation Kissimmee

Ms. McLaughlin complains that she was discriminated against in the Operation Kissimmee investigation because she received a 16-hour time-off award, while the lead agent on the

---

for cash awards, so– [deponent does not complete sentence]" Mot. for Summ. J., Ex. E at 138.

[10]  This is especially problematic given that Mr. Ryan also testified that it was the Department of Justice, not the ATF (where Mr. Ryan worked), that determined whether there was money for cash awards.  *Id.*

[11]  Ms. McLaughlin filed EEO complaints on November 18, 2008 and December 14, 2008.  Plaintiff received the time-off award on February 1, 2009.

case, a White male, received a 24-hour award.[12]  Ms. McLaughlin also complains that she should

have been made the lead agent on the case.  Ms. McLaughlin, however, failed to exhaust her

administrative remedies with respect to this latter claim.[13]  Thus, the Court will only consider her

contention with respect to the reduced time-off award.

### i. Discrimination

The eight hour difference in the time-off award that Ms. McLaughlin received relative

to the lead agent in this case does not rise to the level of "objectively tangible harm" *Russell,* 257

F.3d at 818 or "material employment disadvantage," *Stewart*, 275 F.3d at 1134, necessary to support

a claim of discrimination.  Thus, Ms. McLaughlin has failed to state a claim with respect to the time-

off award.

### ii. Retaliation

Unlike a claim for discrimination, receiving a 16 hour time-off award instead of an

8 hour time-off award may be sufficiently "adverse" to support a claim for retaliation because it

"could well dissuade a reasonable worker from making or supporting a charge of discrimination."

*Burlington Northern*, 548 U.S. at 57.

---

[12]  Ms. McLaughlin also claims that she was discriminated against in the Frequent Flyers investigation because she was only awarded an eight hour time-off award "instead of sixteen hours, as was awarded to other employees." Opp'n at 28.  Ms. McLaughlin makes no mention of the Frequent Flyers investigation in her Amended Complaint, nor is there any reference to an EEO complaint with respect to this investigation.  Having no information that the claim has been administratively exhausted, the Court will not consider it.

[13]  Ms. McLaughlin did not raise this allegation in her EEO complaint, *see* Mot. for Sum. J., Ex. JJ, and consequently it was not accepted by the Department of Justice for investigation. *See id.,* Ex. KK.

Defendant contends that Special Agent Jason White received a greater time-off award than Ms. McLaughlin because he was the lead agent on the case and because he had 26 defendants as part of the investigation compared to only one or two defendants for Ms. McLaughlin.  Ms. McLaughlin does not dispute these facts[14] and offers no evidence from which a reasonable juror would disbelieve Defendant's rationale for the award and find that retaliation was the real reason. As such, Defendant is entitled to summary judgment on this claim.  *See Brady*, 520 F.3d at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence [] there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts.")

### G. Special Agent of the Quarter

Ms. McLaughlin argues that she was discriminated against because she was not selected as the Special Agent of the Quarter.  As Defendant points out, this allegation is the subject of an EEO complaint Ms. McLaughlin filed on February 23, 2010.  At the time the motion for summary judgment was briefed, final action had not been taken on this complaint and Ms. McLaughlin had not notified Defendant of her election to file a civil action.  Accordingly, Ms. McLaughlin failed to exhaust her administrative remedies with respect to this allegation.  *See e.g., Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (citing *Brown v. GSA*, 425 U.S. 820, 823-33 (1976)).

---

[14] Ms. McLaughlin claims that she had no defendants associated with the Operation Kissimmee investigation instead of the "one or two" defendant that Defendant credits her with. *See* Pl. Stmt of Facts ¶ 44.  Either way, it is undisputed that Mr. White had significantly more defendants in this investigation, an important factor in giving him an increased award.

### H. "Berating" by Supervisor

Ms. McLaughlin argues that she was discriminated against and retaliated against by her supervisor, Mr. May, because "[h]e berated her publicly, and threatened to place her on a PIP." Opp'n at 12. Ms. McLaughlin alleges that Mr. May "also excoriated other female agents publicly as well—a practice that he did not engage in with respect to male agents." *Id.* at 2. Ms. McLaughlin testifies to two incidents of "berating."

The first alleged incident occurred at an EAP Seminar in May 2005. Ms. McLaughlin testified that Mr. May got up in front of Ms. McLaughlin and other agents and said "something to the effect that you've [Ms. McLaughlin] been fighting me ever since I've gotten here and you've not supported me . . . ." Opp'n, Ex. 87 at 143. Mr. May then "pointed to Special Agent Polek and said you too." After Mr. May and Ms. Polek "went back and forth," Mr. May left the meeting. *Id.*

The second alleged berating incident occurred soon after Mr. May received a call from an EEO counselor regarding Ms. McLaughlin's complaint about the WIFLE Conference and Community Service Award. Ms. McLaughlin testified that Mr. May called her into his office "within minutes" of his speaking with the counselor. Opp'n, Ex. 88 at 294. Mr. May questioned Ms. McLaughlin about what she had done that week and why she hadn't updated her management logs. *Id.* Ms. McLaughlin took umbrage at the questions because Mr. May had just reviewed her "in-force" and said that it was "looking good," and now, after hearing from an EEO counselor, he was complaining about her management logs. *Id.* at 295.

### i. Discrimination

These incidents are insufficient to support a claim of discrimination. They did not "affect[] the terms, conditions, or privileges of [Ms. McLaughlin's] employment or her future

employment opportunities" *Brown*, 199 F.3d at 457.  Thus, summary judgment will be entered for Defendant on this claim.

### ii.  Retaliation

Similarly, these incidents are insufficient to support a claim for retaliation.   A reasonable employee would not refrain from making or supporting a claim of discrimination because a supervisor:  a) told her in front of other employees that "you've been fighting me ever since I've gotten her and you've not supported me"; or b) questioned her about what she had done during the week and whether she had updated her management logs.   *See Baloch*, 550 F.3d at 94 (sporadic profanity-laden yelling does not qualify "as an adverse action for purposes of retaliation claims."); *Taylor*, 571 F.3d at 234 (affirming summary judgment because criticizing an employees "negative behaviors" is not materially adverse act); *Baird v. Gotbaum*, --- F.3d ---, 2011 WL 6157283 (D.C. Cir. 2011) (An employer's "failure to remedy [] various critiques and epithets . . . [would not] have persuaded a reasonable employee to refrain from making or supporting charges of discrimination."). As such, Defendant is entitled to summary judgment with respect to the alleged "berating."

### H.  Hostile Work Environment

Ms. McLaughlin argues that "Mr. May's confrontations with her and with other female employees" amounted to an "abusive work environment." Her claim is untenable. "Title VII does not provide a cause of action for 'ordinary tribulations in the workplace.'" *Faragher*, 524 U.S. at 788.  To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank,* 477 U.S. at 65).  Ms.

McLaughlin's allegations of confrontations with Mr. May are simply not "sufficiently severe or pervasive to alter the conditions of [her] employment." *Id.* As such, Defendant is entitled to summary judgment on Ms. McLaughlin's claim of a hostile work environment.

## IV. CONCLUSION

Plaintiff presents no basis to find that the events of which she complains occurred because of sex or race discrimination. Nor has plaintiff alleged sufficient acts from which a reasonable juror could find that Defendant created a hostile work environment. Plaintiff has, however, presented a genuine issue of material fact with respect to her claim that she was retaliated against by not receiving a cash award for her work on the Disney Pipe Bomb investigation. Thus, the Court grants in part and denies in part Defendant's motion for summary judgment [Dkt. # 34]. A memorializing order accompanies this Memorandum Opinion.


Date: December 14, 2011                          _____/s/_____
                                                 ROSEMARY M. COLLYER
                                                 United States District Judge